IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARLON D. GRANT,<br><br>Defendant. | Criminal Action Number 3:09CR255 |

## MEMORANDUM OPINION

This matter is before the Court on the defendant's appeal of his conviction by United States Magistrate Judge Dennis W. Dohnal. For the reasons stated herein, the Court affirms the decision of the United States Magistrate Judge.

## I. PROCEDURAL BACKGROUND

On January 20, 2009, the defendant was charged in a violation notice with obstruction of mail, in violation of Title18, United States Code, Section 1701. On June 2, 2009, he and his counsel appeared before the Honorable United States Magistrate Judge Dennis W. Dohnal, and the case was scheduled for a bench trial on July 21, 2009. On July 21, 2009, the defendant was tried and found guilty by Judge Dohnal of the charge of obstruction of mail, in violation of Title 18, United States Code, Section 1701. He was sentenced to a $200.00 fine. On July 29, 2009, the defendant filed a timely notice of appeal.

## II. STATEMENT OF THE ISSUE

The defendant raises a single issue on appeal – arguing that the Magistrate Judge abused his discretion when he permitted computerized post office records to be admitted at the trial as business records, pursuant to Federal Rule of Evidence 803(6).

### III.  STATEMENT OF JURISDICTION

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B) & (D) and 18 United States Code § 3402, an appeal of a sentence imposed by a United States Magistrate Judge may be taken to a judge of the United States District Court.  The scope of the appeal shall be the same as an appeal from a district court to a court of appeals, and the defendant is not entitled to a trial de novo by a district judge.  The United States correctly notes that the issue raised in this appeal is reviewed under the abuse of discretion standard.  *See United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005) ("[D]ecisions to admit evidence [are reviewed] for abuse of discretion.").  "Under the abuse of discretion standard, [the appellate court] may not substitute its judgment for that of the [trial] court; rather [it] must determine whether the [trial] court's exercise of discretion, considering the law and the facts, was arbitrary or capricious."  *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995).

### IV.  LEGAL ANALYSIS

**A.  Factual Background**

The parties stipulated that on Wednesday, January 7, 2009, postal patron Hughes called the Pocoshock Creek Post Office and spoke to manager Patricia Brown ("Brown").  Hughes stated that she had not been receiving her weekly coupons and community newspaper. (Trial Tr. at 4, and Stipulation).  Brown testified that she was the manager of the Pocoshock Creek Post Office and that the defendant, Marlon D. Grant ("Grant" or "the defendant") was an employee at that post office. (Trial Tr. at 5-6).  Brown told Hughes that she would investigate and call her back to report. (Trial Tr. at 7).  Thereafter, Brown went to the area in the post office where undeliverable bulk business mail was placed and found not only Hughes' missing mail, but also similar mail "for the customers on the street before her and after her in perfect delivery order." (Trial Tr. at 7).  Brown described

the type of mail at issue, bulk business mail, how it arrives at the post office, and how it is added to each customer's mail as each delivery is made. (Trial Tr. at 8). She explained that the bulk business mail usually arrived on Sunday night or Monday during the day, and that the clerks would prepare it to be delivered every Tuesday and Wednesday. *Id.* She also explained that when the carrier decides a piece of bulk mail is undeliverable, he places it into the undeliverable bulk business mail bin. (Trial Tr. at 8-9). The bin is checked by clerks to see if there is mail in the bin that should have been delivered, and if there is, it is brought to the attention of management. (Trial Tr. at 9-10). The mail Hughes called about had a waxy surface and was received into the post office in a bundle. To keep it together, it typically has two plastic bands around it, one horizontal and one vertical, and Brown found the mail at issue still in the bundle with the two bands. (Trial Tr. at 14). The mail belonged to a different carrier's route, but that carrier's route was divided and assigned to other carriers that day. (Trial Tr. at 15-16).

On the day Hughes called, January 7, 2009, defendant Grant was assigned to the route that included Hughes and others on her street. (Trial Tr. at 16). Brown testified about the computerized records that showed hours worked and routes assigned. (Gov't Ex. 5 and Trial Tr. at 17-19). The defense objected to the exhibit as hearsay, arguing that there was no proper foundation. (Trial Tr. at 19). The prosecutor questioned Brown further about the records, and Brown testified that the records were kept in the ordinary course of business and created from employees clocking in. (Trial Tr. at 20). She stated: "The carrier comes back from the street in the evening and puts these clock rings in and swipes his badge." *Id.* She explained, in response to a question from the government as to whether these records were taken in the ordinary course of business, "Yes. It's part of our daily duties. We must insure daily that carriers' times are entered in and correct." *Id.* Brown also

3

testified that as the station manager, she was responsible for checking each day to insure that the records were accurate. *Id.* The Court also asked Brown whether the reports were prepared under her direct supervision, to which Brown answered, "Yes. Very often, sir, it's me who does it. I have a supervisor, but the supervisor and I work hand in hand. We don't have separate duties." (Trial Tr. at 20-21). The Court overruled the objection, and Government Exhibit 5 was admitted. (Trial Tr. at 21).

Brown was then questioned about what steps she took after she found the undelivered bulk mail, and she explained that she reported her finding to her supervisor and to the Office of the Inspector General (OIG), which is charged with investigating postal employees. (Trial Tr. at 21). Brown also testified about the other carrier, Mary Johnson, who generally works Grant's route on days when Grant is not working. (Trial Tr. at 22). Brown testified that Johnson was not working at any post office on January 6 or 7, and Government Exhibit 6, which was a time record for Johnson for the applicable time period, was admitted by the Court over the defendant's objection. (Trial Tr. at 22-23). Brown next testified about checking the undeliverable bulk business mail bin on Tuesday, January 20, 2009, stating that she found an exceptional amount of bulk business mail again in the bin. (Trial Tr. at 23-24). She testified that the straps were not around the mail, but it was an exceptional amount and was in sequential order. (Trial Tr. at 24-25). She also testified that Grant had the route for those addresses, and that he worked his route on January 20. (Trial Tr. at 24). Johnson, the carrier who often works Grant's route when he is not working, was working on January 20 but was working at a different post office delivering a different route. *Id.* Brown testified that nine clerks and thirty carriers worked at her branch as of January 2009. (Trial Tr. at 27).

**B. Analysis**

The defendant raises a single issue on appeal – arguing that the Magistrate Judge abused his discretion when he permitted the computerized post office records to be admitted at the trial as business records, pursuant to Federal Rule of Evidence 803(6). The defendant argues that Brown was neither the custodian nor a "qualified witness" to introduce the computerized records of the defendant's attendance and route assignments because, he argues, she did not produce the records. The defendant also argues that "Brown did not show any knowledge of how the [electronic] records were maintained or created," focusing on the nature of the data as "electronic data" that is "transferred into written records."

Federal Rule of Evidence 803 lists various hearsay exceptions. Rule 803(6) provides that records of regularly conducted activities are not excluded by the hearsay rule if certain requirements are met. Rule 803(6) describes the exception as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

FRE 803(6).

The defendant argues that the records indicating hours and days worked and routes worked are hearsay and that Brown was not a custodian or "other qualified witness" as required for the exception to apply. He argues that a "qualified witness" must be one "with knowledge of the declarant's business," citing a Fifth Circuit case, *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 374 n.24 (5th Cir. 1980). In the Fourth Circuit:

> Authenticated business records are excepted from the hearsay rule under Federal Rule of Evidence 803(6). The rule requires that "the testimony of the custodian or other qualified witness" establish that the record was "kept in the course of a regularly conducted business activity, and [that] it was the regular practice of that business activity to make" the record.

*United States v. Francis*, 329 Fed. Appx. 421, 426, 2009 WL 1370374, at *3 (4th Cir. 2009) (quoting Fed. R. Evid. 803(6)). Brown's testimony meets all these requirements. She is the manager of the Pocoshock Creek Post Office, where the records at issue were prepared and kept. Given her role as manager and her testimony, it is clear that Brown was a "qualified witness" and that she has full knowledge of the declarant's business, as required. She testified about how the records were made, that the records are kept in the course of regularly conducted business activity, that it was the regular practice to make the records and to insure that the records were accurate every day, and that as manager, it was her responsibility to either prepare the records herself or have the supervisor, with whom she works "hand in hand," prepare them.

The defendant argues that Brown was not a qualified witness because she did not produce the reports. It is unclear from the testimony whether Brown prepared Government Exhibit 5 herself or whether someone else did. However, it is well-settled that "[t]here is no requirement that the witness who lays the foundation [for a business record] be the author of the record or be able to personally attest to its accuracy." *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990). Further, a "qualified witness" is not required to have "personally participated in or observed the creation of the document." *United States v. Moore*, 791 F.2d 566, 574 (7th Cir. 1986). Nor is it required that the witness know who actually recorded the information. *United States v. Dominguez*, 835 F.2d 694, 698 (7th Cir. 1987). "[T]he [Rule 803(6)] exception is designed to avoid the burdensome process of 'producing, as witnesses, or accounting for the nonproduction of, all

6

participants in the gathering and transmitting, and recording information.'" *United States v. Keplinger*, 776 F.2d 678, 693 (7th Cir. 1985) (quoting Notes of Advisory Committee on Proposed Rule 803).

The defendant's final argument is that "Brown did not show any knowledge of how the [electronic] records were maintained or created." This is not accurate. Brown knew that the document was a timekeeping report for the defendant and that it also contained the routes worked. She explained how the carriers swipe their badges upon their return to the station at the end of the day, and that she has to "make sure on a daily basis that all employees' clock rings . . . accurately reflect their work day." (Trial Tr. at 20). She clearly understood and communicated the basis of the report and how it was created, testifying that "very often" she prepared the reports.

The primary emphasis of Rule 803(6) is "on the reliability or trustworthiness of the records sought to be introduced," and the trial court "has great latitude on the issue of trustworthiness." *Duncan,* 919 F.2d at 986. In this case, the trial court did not abuse its discretion in admitting Government Exhibit 5 into evidence pursuant to Federal Rule of Evidence 803(6). Not only was there no abuse of discretion, the trial court's ruling was completely appropriate given Brown's testimony.

For these reasons, the Court will affirm the decision of the United States Magistrate Judge. An appropriate Order shall issue.


<u>January 27, 2010</u>           /s/
DATE                RICHARD L. WILLIAMS
                    SENIOR UNITED STATES DISTRICT JUDGE